

United States Courts
Southern District of Texas
F I L E D

MAY 1 5 2026

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ANDREW J. MITCHELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:26-cv-00126 |
| YES CAPITAL GROUP LLC, et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**MEMORANDUM AND RECOMMENDATION (Dkt. 10)**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), Plaintiff Andrew J. Mitchell, appearing pro se, respectfully objects to the Memorandum and Recommendation entered May 4, 2026 (Dkt. 10) (the "M&R"), which recommends conditional dismissal of this action within thirty days unless Plaintiff appears through licensed counsel. The M&R rests on the premise that the operative agreement is in the name of Mitchell Adjusting International, LLC ("MAI") and that Plaintiff therefore lacks personal standing. M&R at 2. That premise overlooks four independent sources of Plaintiff's individual-capacity standing: (a) Plaintiff's status as the direct *principal* on whose behalf his son and authorized agent Kade A. Mitchell executed the February 1, 2022 Future Receivables Agreement, with Plaintiff at all times the disclosed real owner and operator of MAI; (b) Plaintiff's direct individual-capacity standing as the personal target of Defendants' August 2022 wire-fraud payoff scheme — a scheme of independent legal significance that does not depend on the February 1, 2022 Agreement and that produced direct personal injury to Plaintiff; (c) Plaintiff's status as the federal-restitution assignee of MAI's residual contract and tort claims under 18 U.S.C. § 3664(m)(1)(A), conferring real-party-in-interest standing under *Sprint Communications Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286–87 (2008), and Federal Rule of Civil Procedure 17(a); and (d) Plaintiff's right under Rule 17(a)(3) to a reasonable opportunity to substitute, join, or ratify before any dismissal is entered. Plaintiff objects on four independent grounds.

## I. STANDARD OF REVIEW

Where, as here, a party files specific objections, this Court reviews the M&R *de novo*. Fed. R.

Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "De novo review entails consideration of an issue as if it had not been decided previously." *United States v. Raddatz*, 447 U.S. 667, 690 (1980). Pro se pleadings, including objections, are liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*); *Barrett v. United States*, 798 F.2d 565, 568 (5th Cir. 1986).

## II. BACKGROUND

Plaintiff Andrew J. Mitchell is the sole member and operator of Mitchell Adjusting International LLC ("MAI"), a Texas-based public adjusting firm. The accounts receivable, contract rights, and accrued causes of action formerly held by MAI have been assigned to Mitchell individually as the funding source for satisfaction of his $3,978,897.34 federal restitution obligation in *United States v. Aga*, No. 1:24-CR-00037-LAG-ALS (M.D. Ga.), under 18 U.S.C. § 3664(m)(1)(A). The assignment was not crafted to evade the corporate-counsel rule; it is the product of federal criminal sentencing and federal restitution policy. Mitchell has bilaterally assumed both MAI's rights *and* MAI's corresponding client-restitution liabilities.

On February 1, 2022, MAI — acting through Plaintiff's son Kade A. Mitchell as Plaintiff's authorized agent and signatory — executed a Future Receivables Agreement with Defendant Yes Capital Group LLC ("Yes Capital"). The Adobe Sign audit trail for the February 1, 2022 Agreement confirms that the signature transaction was initiated and completed using Plaintiff's personal business email address *drew@mitchelladjusting.com*, and that Defendants directed all subsequent communications, account-access requests, and ACH and wire activity to that address and to MAI's operating accounts — accounts held by MAI under Plaintiff's sole-member control. At all times Defendants knew or had reason to know that Plaintiff was the principal real party in interest behind the transaction; the underwriting documents, bank-access credentials, and beneficial owner of the Texas operating accounts targeted by Defendants' ACH program were Plaintiff personally.

Between March 2022 and August 2022, Defendants debited MAI's Chase, Capital One, and Wells Fargo accounts through interstate ACH and wire mechanisms in amounts that exceeded the agreed percentage of receivables and were never reconciled. On August 15, 2022, Defendant Maurice Mosseri, Yes Capital's Senior Funding Manager, sent Plaintiff a written email by interstate wire — addressed personally to "Drew" at *drew@mitchelladjusting.com* — confirming an outstanding balance of $128,506.37 and requesting wire instructions for payoff. On August 23, 2022, Yes Capital issued a formal Payoff Letter by interstate wire offering to accept

$70,000.00 in full satisfaction of the $128,506.37 balance — a discount of $58,506.37 — provided payment was received on or before August 26, 2022. The August 23, 2022 Payoff Letter expressly stated that "[t]he total amount includes the $150.00 fee to terminate the UCC-1 that was filed on this account" and that "[u]pon receiving the payment, the UCC will be released."

On August 31, 2022, Plaintiff caused $70,000.00 to be wired to Yes Capital's Signature Bank account in reliance on the Payoff Letter's written promise of UCC release. Yes Capital accepted the wire, issued a "Zero Balance Letter" dated September 1, 2022 confirming a paid-in-full status, and then *failed to terminate the UCC-1 financing statement* as expressly promised. The UCC-3 amendment record produced in connection with this matter reflects that, as late as September 2, 2022 — *after* Yes Capital had accepted the $70,000 payoff and issued the Zero Balance Letter — the UCC-1 remained on file and a separate amendment was prepared (on information and belief, to broaden the lien rather than terminate it). No UCC-3 termination was ever filed. The August 2022 payoff scheme — a wire-fraud predicate independent of the original Agreement — produced direct, personal economic injury to Plaintiff in the form of a $70,000 wire payment exchanged for a written promise that Defendants never intended to perform.

## III. SPECIFIC OBJECTIONS

**Objection One: The M&R Treats the Caption of the February 1, 2022 Agreement as Dispositive While Overlooking the Agency Relationship by Which Plaintiff Was the Disclosed Principal Behind His Son and Signatory.**

The M&R reasons that "[t]he Future Receivables Agreement that Mitchell attaches to his complaint shows that MAI was a party to the agreement, not Mitchell personally," and that "the account statements attached to the complaint are accounts held in MAI's name, not Mitchell's name." M&R at 2. That observation is correct as to the four corners of the Agreement and the captions of the bank statements. But it is not the end of the standing inquiry. Under settled Texas agency law and Article 9 of the Uniform Commercial Code, a natural-person principal acquires standing to sue on a contract executed by his agent on the principal's behalf, *even when the principal's name does not appear on the face of the instrument*. The Restatement (Third) of Agency § 6.03 (2006) provides that an undisclosed principal is a party to and may enforce a contract executed by his agent within the scope of the agent's authority. Texas follows the Restatement on this point. *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948–49 (Tex. App. — Houston [1st Dist.] 1994, writ denied) (undisclosed principal entitled to enforce contract executed by agent); *Carr v. Hunt*, 651 S.W.2d 875, 879 (Tex. App. — Dallas 1983, writ

ref'd n.r.e.) (same).

Plaintiff was the disclosed principal behind every aspect of the Yes Capital transaction. Plaintiff was at all times the sole member and operator of MAI. The Adobe Sign audit trail for the February 1, 2022 Agreement reflects that Defendants directed the signature package to *drew@mitchelladjusting.com* — Plaintiff's personal email — and that the same address was used for all subsequent communications. The Yes Capital "Bank Account Access Details" form (attached to the Agreement) collected the username "mitchelladjusting2022" and the password "LSUTigers!5" — personal credentials supplied for the purpose of giving Defendants live read-only access to Plaintiff's personal operating-control over MAI's Chase account. The August 15, 2022 outstanding-balance email was sent by Defendant Mosseri *personally to "Drew"*, confirming that Defendants' own internal records treated Plaintiff — not Kade — as the personal principal and counterparty on whom they could rely for payoff.

In these circumstances, the operative legal question is not whether Plaintiff's name appears in the caption of the February 1, 2022 Agreement. It is whether Plaintiff is the principal on whose behalf the agreement was executed. Defendants' own course of dealing — their direct email correspondence with Plaintiff personally, their treatment of Plaintiff personally as the payoff counterparty, and their acceptance of a $70,000 wire procured in reliance on a written promise made to Plaintiff personally — establish that Plaintiff is the real party in interest as a matter of substantive Texas law. The M&R's reliance on the contract caption to defeat that real-party-in-interest status is reversible error on *de novo* review.

The cases relied on in the M&R — *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194 (1993); *Alt. Materials, LLC v. TCH Constr. Grp., Inc.*, 339 F.R.D. 322 (N.D. Fla. 2021); and *Robinson v. Ashland Inc.*, 2024 WL 5158429 (E.D. Tex. Dec. 18, 2024) — each address situations in which the sole member of an LLC sought to litigate *the LLC's own claims* pro se with no independent personal stake in the contract. They do not address agency, disclosed principalship, or wire-fraud injury directed at the natural-person principal personally. The corporate-counsel rule does not strip a natural-person principal of his common-law and statutory right to sue on a contract executed on his behalf by his authorized agent.

**Objection Two: The M&R Overlooks Plaintiff's Direct Individual-Capacity Standing on the August 2022 Payoff Scheme — a Wire-Fraud Scheme of Independent Legal Significance Directed Personally at Plaintiff.**

Even if the M&R's reading of the February 1, 2022 Agreement were correct, it would dispose of only one of Plaintiff's claims. The Complaint pleads, as substantively independent grounds for

relief, a wire-fraud scheme conducted by Defendants in August 2022 that is a freestanding ground for recovery whether or not the underlying Agreement was in MAI's name. The August 2022 scheme operates as follows:

On August 15, 2022, Defendant Mosseri — *writing personally to "Drew"* at *drew@mitchelladjusting.com* — transmitted by interstate wire a representation that the outstanding balance was $128,506.37. On August 23, 2022, Yes Capital transmitted by interstate wire a written Payoff Letter offering to accept $70,000.00 in full satisfaction, expressly stating that "[u]pon receiving the payment, the UCC will be released" and that the $70,000 amount included a "$150.00 fee to terminate the UCC-1 that was filed on this account." On August 31, 2022, Plaintiff caused a $70,000 wire to be transmitted to Yes Capital's Signature Bank account in reliance on those written representations. Yes Capital accepted the wire, issued a Zero Balance Letter on September 1, 2022 confirming "current balance of $0.00" and "paid in full" status, and — *in direct breach of the written Payoff Letter promise* — did not file a UCC-3 termination statement. The UCC-3 amendment record reflects that as late as September 2, 2022 the UCC-1 remained on file and a separate amendment was prepared in furtherance of the lien rather than its release.

Each interstate wire communication in furtherance of the payoff scheme constitutes a separate predicate act under 18 U.S.C. § 1343. The August 15 balance-confirmation email, the August 23 Payoff Letter, the August 31 acceptance of the wire transfer, and the September 1 Zero Balance Letter are each acts in furtherance of a single scheme to defraud Plaintiff of $70,000.00 in exchange for a promise of UCC release Defendants never intended to perform. Under *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649–58 (2008), Plaintiff need not establish first-party reliance to recover under RICO for wire-fraud predicates; he need only establish direct injury to his business or property proximately caused by the predicate acts. The $70,000 wire payment and the unreleased UCC-1 encumbering MAI receivables that have been assigned to Plaintiff personally for restitution purposes are both direct, particularized economic injuries to Plaintiff.

Critically, the August 2022 payoff scheme produces personal injury to Plaintiff on three independent theories, each of which gives Plaintiff direct individual-capacity standing irrespective of the corporate-counsel rule:

**First**, the August 23, 2022 Payoff Letter is a separate, post-Agreement, written contractual offer that was accepted by performance — the $70,000 wire payment. That offer and acceptance constitute a freestanding contract under Texas law independent of the February 1, 2022 Agreement. *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 240 (Tex. App. — Fort Worth

2007, no pet.) (offer accepted by performance creates binding contract). Yes Capital's failure to file the UCC-3 termination as promised is a direct breach of that separate, post-Agreement contract.

**Second**, the August 23, 2022 Payoff Letter is a representation of present intent to release the UCC made by interstate wire for the purpose of inducing payment, which payment was made in reliance and which intent was not honored. That is the classic configuration of common-law fraud and fraudulent inducement under Texas law. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (representation of future intent supports fraud claim where, at the time made, the speaker had no intention of performing). Plaintiff has direct standing as the personal victim of fraudulent inducement.

**Third**, the August 2022 wire fraud constitutes the predicate acts of a RICO claim under 18 U.S.C. § 1962(c) and (d), with Plaintiff as the directly injured natural person under *Bridge v. Phoenix Bond*. The RICO injury — a $70,000 wire payment induced by interstate-wire false promises — was suffered by Plaintiff, the wire-payment principal, irrespective of any corporate-counsel concern about the underlying Agreement.

**Objection Three: Plaintiff Has Independent Standing as the Real Party in Interest Under Sprint v. APCC and Rule 17(a) With Respect to MAI's Residual Claims, and the M&R Disregards the Rule 17(a)(3) Substitution-and-Ratification Safe Harbor.**

Federal Rule of Civil Procedure 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." The real party in interest is the person who, under the substantive law, possesses the right sought to be enforced. *Farrell Constr. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 140 (5th Cir. 1990); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001). The Supreme Court has squarely held that the assignee of a legal claim has Article III standing to assert that claim in federal court. *Sprint Communications Co. v. APCC Servs., Inc.*, 554 U.S. 269, 286–87 (2008).

Plaintiff is the assignee of MAI's accounts receivable, contract rights, and accrued causes of action by operation of the federal-restitution assignment described in Section II *supra*. Under *Sprint* and Rule 17(a), he is the real party in interest with respect to those claims and is entitled to prosecute them in his own name. The corporate-counsel rule of *Rowland* and its Fifth Circuit progeny addresses the standing of an *artificial entity* to appear pro se. It does not deprive a natural-person assignee of his own standing. The assignment is not a colorable contrivance to evade the corporate-counsel rule; it is the product of a federal criminal judgment under 18 U.S.C.

§ 3664(m)(1)(A) that directs the prosecution of all available legal claims toward the satisfaction of a federal restitution obligation. *Heiskell v. Mozie*, 82 F.2d 861, 863 (D.C. Cir. 1936), expressly limits the colorability doctrine to assignments made "solely for the purpose of permitting the assignee — not an attorney — to conduct the litigation in proper person." The sole-purpose colorability concern has no application to an assignment that is the product of federal criminal sentencing.

To the extent the M&R can be read as concluding that the assignment is somehow ineffective, the proper remedy under Rule 17(a)(3) is not dismissal but a reasonable opportunity to ratify, join, or substitute the real party in interest. *Wieburg*, 272 F.3d at 308 ("dismissal . . . without explanation of why substitution would not be more appropriate" constituted abuse of discretion). The M&R offers no such opportunity and no such explanation.

To the extent any pleading defect remains, leave to amend is the proper remedy. Fed. R. Civ. P. 15(a)(2); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (*per curiam*). Plaintiff respectfully requests leave under Rule 15(a)(2) to file an Amended Complaint that (a) attaches as exhibits the February 1, 2022 Future Receivables Agreement with its complete Adobe Sign audit trail, the August 15, 2022 Mosseri email addressed to Plaintiff personally, the August 23, 2022 Payoff Letter, the September 1, 2022 Zero Balance Letter, and the September 2, 2022 UCC Financing Statement Amendment; (b) pleads the agency relationship by which Kade A. Mitchell executed the February 1, 2022 Agreement on Plaintiff's behalf with greater specificity; (c) pleads the August 2022 payoff scheme as freestanding RICO, wire-fraud, breach-of-contract, and fraudulent-inducement claims independent of the underlying Agreement; and (d) re-pleads all claims in Plaintiff's direct individual capacity as the natural-person real party in interest. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (amendment futile only where it would fail to survive Rule 12(b)(6)).

**Objection Four: To the Extent the M&R Identifies a Genuine Standing or Counsel Concern, the Proper Remedy Is Appointment of Counsel Under 28 U.S.C. § 1915(e)(1) and Naranjo, Not Dismissal.**

If the Court entertains any residual concern that Plaintiff cannot adequately present this matter pro se, the appropriate remedy is appointment of counsel under 28 U.S.C. § 1915(e)(1), not dismissal. The Fifth Circuit has recognized that where a court is satisfied that pro bono efforts have failed, it possesses inherent authority to appoint counsel notwithstanding the discretionary character of § 1915(e)(1). *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015). Plaintiff has

concurrently filed a Motion for Appointment of Counsel documenting his diligent and unsuccessful efforts to retain private counsel. The combined relief — sustaining of these Objections and appointment of counsel — addresses any standing concern raised by the M&R without entry of any dismissal order.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court SUSTAIN these Objections, DECLINE to adopt the Memorandum and Recommendation, GRANT the concurrently-filed Motion for Appointment of Counsel and Motion to Stay, and PERMIT Plaintiff leave to file an Amended Complaint pleading the agency relationship by which the February 1, 2022 Agreement was executed on Plaintiff's behalf, attaching the August 2022 payoff sequence with full particularity, and re-pleading all claims in Plaintiff's direct individual capacity as the natural-person real party in interest.

Respectfully submitted,

**Andrew J. Mitchell**
Plaintiff, pro se
LA DOC # 782047
Jackson Parish Jail
1828 Gansville Road
Jonesboro, LA 71251

### CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, a true and correct copy of the foregoing Objection to the Memorandum and Recommendation was placed in the prison mail system at Jackson Parish Jail, postage prepaid, addressed to the Clerk of Court, United States District Court, Southern District of Texas, Galveston Division, for filing and service through the Court's CM/ECF system on all counsel of record.

Dated: May 11, 2026

**Andrew J. Mitchell**